UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00490-RSE

**GHALIB AL SHUWAILI**                                                                                      **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Ghalib Al Shuwaili's ("Plaintiff's") application for supplemental security income benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Plaintiff (DN 21) and the Commissioner (DN 27) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 17).

### I. Background

Plaintiff Ghalib Shuwaili is 55 years old, lives with his wife, and has at least some college education. (Tr. 42–43, 173, 164, 166). Plaintiff is presently unemployed but has past relevant work experience as a filter assembler from September 2016 to November 2016 and an eyeglass repairman in February 2017. (Tr. 166). On May 9, 2017, Plaintiff protectively filed an application

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, alleging disability beginning on February 7, 2017. (Tr. 151–57). Plaintiff claims he could not perform work at substantial gainful levels following neck vertebrae surgery in 2017 and because of high blood pressure, gastroesophageal reflux disease, back contusion, left upper arm strain, and lower left back abrasion, all of which began that year. (Tr. 55–56). Plaintiff's application was denied initially on September 6, 2017 (Tr. 79) and upon reconsideration on December 9, 2017 (Tr. 88). Upon Plaintiff's request, a hearing was conducted in Louisville, Kentucky before Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") on March 28, 2019. (Tr. 31–54). ALJ Pickett issued an unfavorable decision on May 15, 2019. (Tr. 15–25).

ALJ Pickett applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since May 9, 2017. (Tr. 17). Second, Plaintiff has the severe impairments of degenerative disc disease, major joint dysfunction, and hypertension. (Tr. 17–18). Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. § 404, Subpt. P, App'x 1. (Tr. 18). ALJ Pickett then determined Plaintiff has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> He cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps and stairs; he can perform occasional balancing, stooping, kneeling, crouching, and crawling as well as reaching overhead bilaterally; and he can have occasional exposure to humidity, extreme cold, and hazardous conditions such as unprotected heights or dangerous machinery.

(*Id.*). Fourth, ALJ Pickett found Plaintiff capable of performing his past relevant work considering his RFC. (Tr. 23). In light of this finding, ALJ Pickett deemed Plaintiff not disabled. Even so, ALJ

Pickett made alternative findings under step five of the sequential evaluation process. Considering Plaintiff's age, education, work experience, and RFC, ALJ Pickett found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform in addition to his past relevant work. (Tr. 24).

ALJ Pickett concluded that Plaintiff was not disabled, as defined in the Social Security Act, from May 9, 2017 through the date of his decision. (Tr. 25). Plaintiff sought review of ALJ Pickett's decision. (Tr. 148–50). The Appeals Council declined review on May 8, 2020. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations

omitted).

### III. Analysis

Plaintiff raises two challenges for review. First, he contends ALJ Pickett failed to properly identify "the true nature" of his diagnosis or acknowledge medical evidence supporting a listed impairment under 20 C.F.R. § 404. (DN 21, at PageID # 1788). Second, Plaintiff argues ALJ Pickett's RFC determination was unsupported by substantial evidence because he failed to properly assess certain medical opinions under 20 C.F.R. § 416.920(c). (*Id.* at PageID # 1792).

#### A. Finding No. 3 – Listed Impairments

Plaintiff first alleges that ALJ Pickett's analysis under step three was insufficient. He points to ALJ Pickett's failure to acknowledge evidence of Plaintiff's coronary artery disease at step two, which he suggests meets the listing criteria of 20 C.F.R. § 404 at step three. (DN 21-1, at PageID # 1788). The Commissioner positions that Plaintiff failed to meet his burden of proving both requirements to demonstrate a listed impairment under the applicable standard. (DN 27, at PageID # 1815).

Two preliminary matters must be addressed. First, Plaintiff asserts that ALJ Pickett's failure to acknowledge his coronary artery disease at steps two and three was erroneous. (DN 21-1, at PageID # 1788). ALJ Pickett did, however, consider this impairment. Citing to various medical findings in the record, he opined,

> In January 2018, [Plaintiff] underwent diagnostic coronary angiography, left heart catheterization, and radial angiography. He was diagnosed with severe coronary artery disease, ostial disease of the left anterior descending artery, and ostial disease of the circumflex coronary artery and the mid left anterior descending artery. Ex. 13F. During a cardiology progress report, doctors reported the claimant had no clear and significant left main disease. Nor did his doctors feel that he had significant ostial disease. He continued to take Amlodipine, Metoprolol, Lipitor, and Aspirin. Ex. 15F, p. 311; Ex. 21F, p. 85. There was no evidence of critical coronary artery disease or typical angina pectoris. He had at most a small area of inferior ischemia. Ex. 15F, p. 313. Physical examination found regular rhythm, no evidence of a

4

> murm[u]r, no rubs or thrills, normal carotid pulses and pedal pulses, and no lower extremity edema. Ex. 21F, p. 86.

(Tr. 20). Although he did not address this evidence at steps two or three of his analysis, it was not necessary for him to do so since it is clear he considered it elsewhere. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that when sufficient factual findings are made elsewhere, an ALJ need not "spell out every fact a second time").

Second, an ALJ's designations at step two and listed impairment analysis at step three are entirely distinct and involve different standards of proof for a claimant. The fact that ALJ Pickett did not assign a designation to Plaintiff's coronary artery disease at step two was not reversible error. The regulations do not require an administrative law judge to designate each impairment as "severe" or "non-severe." 20 C.F.R. § 404.1520(a)(ii). The severity standard at step two is merely a threshold inquiry that, if satisfied by the evidence presented by a claimant, allows the administrative law judge to proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523(c). ALJ Pickett determined that Plaintiff had severe impairments sufficient to proceed to step three. Therefore, "[t]he fact that some of [claimant]'s impairments were not deemed to be severe at step two is [] legally irrelevant." *Rhodes v. Comm'r of Soc. Sec.*, No. 3:17-CV-167-RGJ-CHL, 2019 WL 7643879, at *6 (W.D. Ky. Mar. 7, 2019) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

Unlike the relatively low hurdle at step two, a claimant must meet a substantial burden to demonstrate a listed impairment at step three. Listed impairments are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Reynolds v. Comm's of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011). Because a claimant who meets the requirements of a listed impairment at step three will be deemed conclusively disabled and entitled to benefits, the

5

burden on the claimant is high. *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019). ALJ Pickett determined that Plaintiff's "cardiovascular condition" failed to meet or medically equal a listed impairment, as the record "fail[ed] to demonstrate evidence of any cardiovascular system deficits that rise to listing level." (Tr. 18.)

To demonstrate a listed impairment of coronary artery disease, a claimant must provide angiographic evidence of:

> a. 50 percent or more narrowing of a nonbypassed left main coronary artery;
> b. 70 percent or more narrowing of another nonbypassed coronary artery;
> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery;
> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
> e. 70 percent or more narrowing of a bypass graft vessel.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.04(C)(1). In addition, a claimant must demonstrate that such narrowing very seriously limits his ability to "independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.04(C)(2).[2]

The Commissioner concedes that it is "not at all clear" whether Plaintiff meets the first prong of this test based on his January 2018 angiographic results. (DN 27, at PageID # 1815). Plaintiff believes definitively that he does, pointing to his January 2018 coronary angiography

---

2  It is also necessary, under 4.04C, that an "MC [medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual." This element, however, need not be demonstrated by the Plaintiff:

> In Social Security disability law, "MC" is a term of art. At the state-agency (pre-ALJ) level, the Commissioner makes his initial and reconsideration disability determinations based on cooperation of a "team consisting of an MC [medical consultant] [and/or] a PC [psychological consultant] and a disability examiner (DE) generally makes the disability determination [and] [i]f there is no medical evidence in the file, the DE alone makes the determination." *Bartee v. Comm'r*, No. 16-10083, 2017 WL 1173771, at *2 (E.D. Mich. Mar. 30, 2017). While Plaintiff generally carries the burden of showing that each requirement of the Listing is satisfied, the Commissioner has offered and the Court finds no authority to support that Plaintiff has the burden of obtaining evidence from a member of the Commissioner's own decisionmaking team (the MC, over which Plaintiff has no control and with which he may have had no contact) regarding the risk of exercise tolerance testing.

*Stephens v. Saul*, No. 1:20-CV-00031-LLK, 2020 WL 5665610, at *2 (W.D. Ky. Sept. 23, 2020).

results showing 50–60% distal left main artery disease, a 50–60% ostial left anterior descending artery lesion, a 50–80% mid-left anterior descending artery lesion approximately 25–30 mm in length, and a 50–60% ostial circumflex lesion. (Tr 496.) This would, as Plaintiff indicates, appear to demonstrate that Plaintiff's coronary artery disease has caused "70 percent or more narrowing of another nonbypassed coronary artery" and "50 percent or more narrowing of at least two nonbypassed coronary arteries." The Court agrees with the Commissioner, however, that such results are unclear given the discrepancies between the language used. Even accepting Plaintiff's position as true, he still must demonstrate that such narrowing very seriously limits his ability to "independently initiate, sustain, or complete" daily activities.

As to the second prong of 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.04(C), the Commissioner contends that record evidence shows "no serious limitations" in Plaintiff's ability to independently perform activities of daily living. (DN 27, at PageID # 1815). The Commissioner points to Plaintiff's ability to take care of "personal needs" such as bathing, shaving, dressing, and exercising and the fact that he takes college classes, shops with family, and drives part-time for Uber. (*Id.*). Plaintiff suggests he meets this prong as well, citing to hearing testimony that he suffered fatigue, had difficulty breathing, and needed to take naps daily. (DN 21-1, at PageID # 1790 (citing Tr. 40)). He also notes that he reported to his doctor an inability to lift anything heavy or go to the gym as he used to. (*Id.* (citing Tr. 1691, 1683)).

The Court agrees with the Commissioner that the inquiry fails at the second prong, and Plaintiff did not meet his burden of proving a listed impairment. Although easily fatigued and unable to exercise as he once could, substantial evidence supports ALJ Pickett's finding that this impairment did not rise to listing level, as Plaintiff has not demonstrated an inability to complete activities of daily living. He manages to care for himself, engage in social activities, take college

courses, and work part-time as a ride-share driver. (Tr. 178, 179, 19, 36). Moreover, the Sixth Circuit has made it clear that even if an ALJ's step-three conclusion was cursory, the decision is supported by substantial evidence if "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Forrest v. Comm'r of Soc. Sec.*, 591 F App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Based on his discussion of Plaintiff's coronary artery disease and capabilities to perform daily activities at step four, the Court finds that ALJ Pickett did not err in concluding at step three that none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. § 404, Subpt. P, App'x 1.

B. Finding No. 5 – Residual Functional Capacity

Plaintiff next takes issue with ALJ Pickett's RFC determination. The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases his residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff claims ALJ Pickett failed to properly weigh the opinions of Dr. R. Kirk Owens, II and two state agency consultants, Sylvia Combs and Anthony Pitts, which resulted in an RFC determination not supported by substantial evidence. (DN 21-1, at PageID # 1792–95).

Plaintiff alleges ALJ Pickett found the opinions of the state agency psychological consultants persuasive and that of Dr. Owens unpersuasive "without any rationale as to why the evidence supports one but not the other." (*Id.* at PageID # 1794). He also notes that the state agency consultants performed their assessments prior to when evidence of Plaintiff's coronary artery

8

disease was available, rendering their assessments incomplete. (*Id.*). The Commissioner counters that ALJ Pickett properly accepted a majority of the state agency reviewing physicians' assessments because they were consistent with and supported by other evidence in the record, while portions of Dr. Owens' opinion were not. (DN 27, at PageID # 1816). The Commissioner further notes that Dr. Owens' evaluation was also performed in 2017, which by Plaintiff's logic should render it similarly unpersuasive. (*Id.*).

The new regulations for evaluating medical opinions are applicable here since Plaintiff's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). As Plaintiff notes, an ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. (DN 21-2, at PageID # 11); 20 C.F.R. 404.1520c(c)(1)–(5). But the administrative law judge need only explain how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

The Court again must make a preliminary clarification, as Plaintiff appears to misinterpret ALJ Pickett's findings. His argument centers on ALJ Pickett purportedly deeming the state agency

consultants' opinions "persuasive" and Dr. Owens' opinion "less persuasive" in their entirety. Instead, ALJ Pickett accepted and rejected portions of Dr. Owens' and the state agency consultants' findings. Plaintiff also suggests ALJ Pickett made a "scrivener's error" in deeming part of the state agency consultants' opinions persuasive and later designating another portion "less persuasive." (DN 21-1, at PageID # 1793, n.1). But careful review of ALJ Pickett's decision reveals this was not a typographical error. Instead, ALJ Pickett considered some of the state agency consultants' findings[3] persuasive, and other findings[4] less persuasive.

Plaintiff also inexplicably argues that the state agency consultants' opinions, which were developed in December 2017, are "incomplete" because they could not have taken into account his coronary artery disease, but that Dr. Owens' opinion, formed earlier the same year, should have been found persuasive. As the Commissioner indicates, this argument is illogical. Further, since the new regulations do not call for an ALJ to assign evidence varying weight, 20 C.F.R. § 404.1520c(a), there was no risk that out-of-date findings would be overly credited. Instead, ALJ Pickett evaluated the medical opinions according to the new regulations, determining their relative persuasiveness as compared to the record evidence.

Upon review, the Court finds that ALJ Pickett's evaluation of the state agency consultants' opinions comports with the regulations. He discussed the consistency and supportability factors, as required, when he deemed portions of their conclusions persuasive and others less persuasive. ALJ Pickett found that the state agency consultants' conclusions that Plaintiff could perform light work involving occasional climbing of ramps and stairs, crawling, and reaching overhead with the

---

[3] Findings deemed persuasive by ALJ Pickett include that Plaintiff could perform light work; occasionally climb ramps and stairs; occasionally crawl; occasionally reach overhead with the bilateral upper extremities; and never climb ladders, ropes, or scaffolds.
[4] Findings deemed less persuasive include that Plaintiff should avoid concentrated exposure to extreme cold, humidity, and hazards such as unprotected heights and could frequently push and pull with the bilateral upper extremities, balance, stoop, kneel, and crouch.

bilateral upper extremities were consistent with and supported by evidence that he had "full range of motion without pain and no visible abnormalities" in his lumbar spine, that "with treatment, [Plaintiff] began to exhibit normal movement in all extremities, muscle strength, and gait," and that his "reflexes were within normal limits." (Tr. 21). Similarly, their determinations that Plaintiff could never climb ladders, ropes, or scaffolds was deemed persuasive based on supporting evidence of his grip strength, a somewhat "limited range of motion in the left upper extremity," and an inability to lift one arm above his head. (*Id.*).

On the other hand, ALJ Pickett determined the state agency consultants' opinions that Plaintiff should avoid concentrated exposure to extreme cold, humidity, and unprotected heights to be inconsistent with and unsupported by evidence that he could have "occasional" exposure to such hazards in light of his "non-severe" sleep apnea. (Tr. 22). Likewise, ALJ Pickett deemed the state agency consultants' findings that Plaintiff could frequently push and pull with the bilateral upper extremities, balance, stoop, kneel, and crouch "less persuasive" because the record evidence showed Plaintiff was limited in his ability to perform such activities. (Tr. 21). Having explained the supportability and consistency factors, ALJ Pickett properly weighed the state agency consultants' opinions and sufficiently articulated his findings under the regulations.

The Court also finds that ALJ Pickett evaluated Dr. Owens' opinion in accordance with the regulations. He deemed Dr. Owens' finding that Plaintiff could perform "light duty work" persuasive because it was consistent with and supported by the record evidence, including that his right grip strength ranged from 20 to 35 pounds and left grip strength ranged from 20 to 40 pounds; that with treatment Plaintiff began to exhibit normal movement in all extremities, muscle strength, and gait; that his reflexes were within normal limits; that he reported no headaches or dizziness; and that despite his history of hypertension, his echocardiogram was normal and his sinus

bradycardia had resolved. (Tr. 22, 21). Even so, ALJ Pickett restricted Plaintiff to "less than the full range of light work." (Tr. 22).

On the other hand, ALJ Pickett considered Dr. Owens' opinion that Plaintiff was restricted to lifting no more than 10 to 15 pounds and that he could not perform bending, lifting, twisting, turning his neck, or prolonged sitting and standing to be "less persuasive" because he found it to be inconsistent with and unsupported by other evidence of record, namely his "exhibit[ing] normal movement in all extremities, muscle strength, and gait." (Tr. 19, 21). Having sufficiently articulated the consistency and supportability factors, ALJ Pickett's analysis of Dr. Owens' findings was proper under the regulations. His decision was supported by substantial evidence and the undersigned finds no error.

ORDER

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

January 19, 2022

Copies: Counsel of Record